SEALED

JC/JEJ: USAO 2019R00847

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. 24-Cr-00370-DLB |
| | * | |
| JAMES TILLMAN, | * | (Conspiracy to Commit Bribery of a |
| | * | Federal Official, 18 U.S.C. §§ 371, |
| Defendant | * | 201(b)(1)(A); Bribery of a Federal |
| | * | Official, 18 U.S.C. § 201(b)(1)(A); |
| | * | Forfeiture, 18 U.S.C. § 981(a)(1)(C), |
| | * | 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c)) |
| | * | |

*******

## INFORMATION

### COUNT ONE
(Conspiracy to Commit Bribery of a Federal Official)

The United States Attorney for the District of Maryland and the Chief of the Public Integrity Section of the Criminal Division of the United States Department of Justice charge that:

#### Introduction

At all times relevant to this Information, with all dates being approximate and inclusive:

1. The defendant **JAMES TILLMAN** (**"TILLMAN"**), a D.C. resident, formed Company A in or about 2008 to perform general construction work. **TILLMAN** was the sole owner of Company A.

2. The General Services Administration ("GSA") was an agency of the executive branch of the United States government. Among other things, GSA was responsible for the development and management of property owned or leased by the federal government.

3. At all relevant times, Public Official A, a Maryland resident, was a contracting officer's representative employed by the GSA.

4.  In or about 2020 and 2021, Public Official A operated out of a GSA facility at the St. Elizabeths West Campus, located in Southeast D.C. There were a number of prime contractors working at the St. Elizabeths West Campus, including Company B (and its related entities, referred to here collectively as Company B).

5.  **TILLMAN** first met Public Official A in or about 2017 or 2018 when **TILLMAN** was looking for federal contract work for Company A.

6.  In or about 2020 and 2021, Company A performed subcontracting work on certain GSA federal projects under prime contractor Company B. These GSA contracts were overseen on a day-to-day basis by Public Official A.

## The Conspiracy

7.  Beginning in or about early 2020 and continuing until at least mid-2021, in the District of Maryland and elsewhere, the defendant,

### JAMES TILLMAN,

did knowingly and willfully combine, conspire, and agree together and with Public Official A to engage in a corrupt scheme whereby Public Official A exercised his authority over the GSA contracting process to direct GSA federal project work to Company A, a company owned by **TILLMAN**, in exchange for cash and other things of value provided by **TILLMAN** and Company A, in violation of Title 18, United States Code, Section 201(b)(1)(A).

## Manner and Means

The manner and means of the conspiracy included, but were not limited to, the following:

8.  Public Official A introduced **TILLMAN** to Company B personnel and effectively paired Company A and Company B together to bid on GSA federal projects.

2

9. Public Official A told **TILLMAN** to fraudulently inflate the costs associated with projects on which Company B was bidding (and on which Company A was the anticipated subcontractor).

10. Public Official A then solicited and accepted things of value from **TILLMAN**, including cash, moving expenses for Public Official A's romantic partner, and a sports car.

## Overt Acts

In furtherance of the conspiracy and to achieve its purposes, **TILLMAN** and Public Official A committed the following overt acts, among others, in the District of Maryland and elsewhere:

### *2020: The Window Film Project and the First Set of Kickbacks*

11. In or about 2020, Public Official A invited **TILLMAN** to work on some construction projects at the St. Elizabeths West Campus.

12. Because **TILLMAN** had no relationship with any of the prime contractors generally working at the site, Public Official A offered to facilitate an introduction to Company B personnel and eventually introduced **TILLMAN** to one of Company B's supervisors.

13. In or about early 2020, Public Official A began seeking a contractor who could place privacy film on certain interior office windows in a building on the St. Elizabeths West Campus.

14. Company B ultimately bid on the work as the prime contractor, and Public Official A effectively ensured that Company A would serve as the subcontractor on the project.

15. Public Official A told **TILLMAN** to substantially inflate his estimated costs and GSA ultimately accepted the inflated proposal.

3

16. Between in or about April 2020 and in or about June 2020, Company A in fact completed the window film project with the assistance of a subcontractor.

17. While the window film project was underway, Public Official A informed **TILLMAN** about a future potential project involving the remediation of sinkholes at the St. Elizabeths West Campus.

18. During and around this period, Public Official A solicited and accepted numerous things of value from **TILLMAN**, including:

   a. Before the window film project began, at a time when Public Official A was suggesting to **TILLMAN** that Public Official A was planning to direct GSA subcontracting work toward **TILLMAN** and Company A, Public Official A solicited a total of approximately $8,000 in cash from **TILLMAN** on different occasions, which **TILLMAN** paid.

   b. In or about mid-2020, Public Official A solicited $10,000 in cash, which **TILLMAN** paid to Public Official A in a parking lot in Clinton, Maryland.

   c. In or about May 2020, Public Official A demanded that **TILLMAN** pay approximately $2,500 in moving expenses so that Public Official A's romantic partner could move to a new residence.

   d. In or about mid-2020, **TILLMAN** agreed to pay Public Official A—who had repeatedly asked **TILLMAN** to direct construction work to Public Official A's private business—$3,800 for work that Public Official A and Public Official A's relative performed at **TILLMAN**'S relative's residence.

   e. In or about 2020, **TILLMAN** agreed to provide Public Official A with approximately $2,000 worth of seafood that **TILLMAN** had obtained at a discount.

4

### *2021: The Sinkhole Project and the Second Set of Kickbacks*

19. In or about late 2020 and early 2021, Public Official A was preparing for a GSA project involving the remediation of sinkholes at the St. Elizabeths West Campus, specifically at the intersection of Ash and Birch Streets.

20. Although **TILLMAN**'s company, Company A, had no experience remediating sinkholes, Public Official A effectively paired Company B (the prime contractor) with Company A as a subcontractor to prepare a proposal for the work.

21. In or about April 2021, Company B bid on the work for approximately $634,000, and GSA accepted the proposal.

22. During this period, Public Official A informed **TILLMAN** that Public Official A wanted **TILLMAN** to purchase a vehicle for Public Official A using the funds **TILLMAN** earned through Company A's work on the sinkhole project.

23. Between in or about June 2021 and in or about August 2021, Company A performed much of the work remediating the sinkholes with the assistance of another subcontractor, and collected hundreds of thousands of dollars from Company B in connection with the project.

24. During and around this period, Public Official A solicited and accepted numerous things of value from **TILLMAN**:

    a. On or about July 6, 2021, Public Official A certified the completion of a portion of the work on the St. Elizabeths sinkhole remediation project.

    b. In or about July 2021, Public Official A selected the used sports car that Public Official A then asked **TILLMAN** to purchase on Public Official A's behalf.

    c.  On or about July 22, 2021, Public Official A texted **TILLMAN** the name of the owner of the sports car, told **TILLMAN** to make a check payable to the car's owner, and added "The [car emoji] 8500.00."

    d.  On or about July 23, 2021, **TILLMAN** wrote a check for $8,500 on Company A's checking account to the owner of the sports car.

    e.  In or about 2021, Public Official A solicited approximately $25,000 in cash from **TILLMAN**, which **TILLMAN** paid.

18 U.S.C. § 371
18 U.S.C. § 201(b)(1)(A)

## COUNT TWO
### (Bribery of a Federal Official)

The United States Attorney for the District of Maryland and the Chief of the Public Integrity Section of the Criminal Division of the United States Department of Justice further charge that:

1. Paragraphs 1 through 6 and 8 through 25 of Count One are incorporated and realleged as if fully set forth herein.

2. Between in or about April 2021 and in or about July 2021, in the District of Maryland, the defendant,

**JAMES TILLMAN,**

did, directly and indirectly, corruptly give, offer, and promise a thing of value to Public Official A, with the intent to influence an official act, that is **TILLMAN** agreed to purchase a vehicle for Public Official A in exchange for Public Official A's role in directing GSA federal project work associated with the remediation of sinkholes at the St. Elizabeths West Campus to Company A.

18 U.S.C. § 201(b)(1)(A)

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland and the Chief of the Public Integrity Section of the Criminal Division of the United States Department of Justice further allege that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction of the offenses set forth in Counts One and Two of this Information.

2. Upon conviction of the offenses set forth in Count One and Count Two, the defendant,

**JAMES TILLMAN,**

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense.

### Substitute Assets

3. If, as a result of any act or omission of the defendant, any such property subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third person;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be subdivided without difficulty,

8

the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 28 U.S.C. 2461(c), shall be entitled to forfeiture of substitute property.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

EREK L. BARRON
United States Attorney
District of Maryland

By: _____ for
Joel Crespo
Assistant United States Attorney
6406 Ivy Lane, 8th Fl.
Greenbelt, MD 20770
Tel: 301-344-4433
Email: jcrespo@usdoj.gov

COREY R. AMUNDSON
Chief, Public Integrity Section
U.S. Department of Justice

By: _____ for
Jonathan E. Jacobson
Trial Attorney, Public Integrity Section
1301 New York Ave. NW, 10th Fl.
Washington, DC 20005
Tel: 202-514-1412
Email: Jonathan.Jacobson@usdoj.gov